UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FICEP CORPORATION,

               Movant,

v.                                           Case No. 14-243-CM

HAAS METAL ENGINEERING,
INC.,

               Respondent.

## ORDER

Ficep Corporation ("Ficep") has filed a motion to compel compliance with a subpoena issued to nonparty Haas Metal Engineering, Inc. ("Haas" or "HME") **(ECF doc. 1)**. Ficep issued the subpoena as part of discovery in a patent-infringement lawsuit against Voortman USA Corp. ("Voortman") in the District of Maryland (Case No. 13-cv-00429). The subpoena commands the inspection of the use of Voortman's products at Haas's facility in Topeka, Kansas.[1] Haas opposes the inspection as irrelevant and unduly burdensome, and because of confidentiality concerns.[2] For the reasons discussed below, Ficep's motion is granted.

On October 16, 2014, under Fed. R. Civ. P. 30(b)(6), Ficep served a subpoena upon Haas requesting a deposition, the production of documents, and an inspection of

---

[1] ECF doc. 2-2.

[2] ECF doc. 14.

Haas's facility. Specifically, Ficep asked "to inspect the use of Voortman's products at HME, including its process of creating a design model, such as a Tekkla model or CAD model, through fabrication of the object."[3] The deposition and inspection were originally scheduled for November 7, 2014, at 9:00 a.m. in Topeka. The parties later agreed to move the date of the inspection to November 21, 2014. However, after several exchanges between the parties, Haas served formal objections to the subpoena on November 21, 2014,[4] and the inspection was canceled.

Under Fed. R. Civ. P. 45(d)(2)(B), objections to a subpoena must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Here, Haas's objections were due by October 30, 2014. Because Haas's objections were served more than three weeks late, Ficep asserts that the objections are waived. Haas responds that its objections should be allowed because Ficep changed its position as to the nature and extent of the inspection of the equipment. Haas explains that it did not and does not object to just an inspection of the equipment. However, because Ficep now seeks to "videotape the entire fabrication process," Haas argues that this "change" caused it to promptly assert objections and there is good cause for such delay.

---

[3] ECF doc. 2-2.

[4] *See* ECF doc. 2-11 at 2-4.

Some courts have recognized that, "[i]n unusual circumstances and for good cause, … the failure to act timely will not bar consideration of objections."[5] Such unusual circumstances have been found in cases where (1) the subpoena is overbroad on its face and exceeded the bounds of fair discovery, (2) the subpoenaed witness is a nonparty acting in good faith, and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena.[6]

As mentioned earlier, Haas is a nonparty to the underlying litigation between Ficep and Voortman. Although this status does not excuse Haas's obligation to comply with the applicable rules, it does merit consideration.[7] Further, there is no indication that Haas has acted in bad faith. Finally, the exhibits submitted in support of the motion to compel and response thereto show that Haas and Ficep have been in regular contact to reach a compromise regarding the inspection *prior* to the time Haas challenged the legal basis for the subpoena. In consideration of the foregoing, the court will not find that Haas has waived its objections to the subpoena.

---

[5] *Premier Election Solutions, Inc. v. Systest Labs Inc.*, No. 9-1822, 2009 WL 3075597, *4 (D. Colo. Sept. 22, 2009) (citing *American Elec. Power Co. v. U.S.*, 191 F.R.D. 132, 136-37 (S.D. Ohio 1999); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)).

[6] *Id. See American Elec.*, 191 F.R.D. at 137; *Concord*, 169 F.R.D. at 48.

[7] *See* Fed. R. Civ. P. 45(d)(2)(B)(ii), "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."

Irrelevancy.  Initially, Haas objected to the subpoena "to the extent that it is … irrelevant, [and/or] not reasonably calculated to lead to the discovery of admissible evidence."[8]  Irrelevance in and of itself does not appear among the enumerated reasons for protection against a subpoena under Rule 45.[9]  It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b).[10]  Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense … Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[11]  A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[12]  When the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish the lack of relevance by

---

[8] ECF doc. 2-11 at 2.

[9] *In Re Subpoena Duces Tecum Directed to RCA Group*, No. 06-230, 2006 WL 3844791, *3 (D. Kan. Dec. 28, 2006).

[10] *Stewart v. Mitchell Transport*, No. 01-2456, 2002 WL 1558210, *3 (D. Kan. July 11, 2002).  *See* Advisory Committee Note to the 1970 Amendment of Rule 45(d)(1) (the 1970 amendments "make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules.")  *See also* 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 2458 at p. 42 (2d ed.) (scope of discovery "exceedingly broad" and incorporates the provisions of Rules 26(b) and 34).

[11] Fed. R. Civ. P. 26(b).

[12] *Stewart*, 2002 WL 1558210, at *4 (citing *Shelton v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001) (citations omitted)).

demonstrating that the requested discovery does not come within the broad scope of relevance as defined under Rule 26(b)(1), or is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure.[13]  Conversely, when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the information or documents sought.[14]  The court finds that the request ("to inspect the use of Voortman's products at HME, including its process of creating a design model, such as a Tekkla model or CAD model, through fabrication of the object") appears relevant on its face.  Thus, Haas has the burden to show the inspection is irrelevant.

In response to Ficep's motion, Haas now asserts that it "has no basis to determine whether inspection of the equipment is relevant or not."[15]  Haas explains that it is not aware of the issues surrounding the pending litigation between Ficep and Voortman to adequately address relevancy (assuming Ficep seeks to inspect only the Voortman equipment and not Haas's facility).  However, if Ficep wants to inspect its facility, Haas asserts that any such inspection would be irrelevant to the patent infringement case "since that case only involves the Voortman equipment and nothing relating to HME's facility."[16]

---

[13] *DIRECTV, Inc. v. Pucinelli*, 224 F.R.D. 677, 684 (D. Kan. 2004).

[14] *Id.*

[15] ECF doc. 14 at 5.

[16] *Id.* at 6.

Although Haas clearly has *not* met its burden to show the inspection requested is irrelevant, Ficep nonetheless provides some background of the pending litigation to show the relevancy of its request.  Ficep explains that it has accused Voortman of infringing the "'719 patent" in its V630 beam drilling machines and its V808 coping machines, including Voortman's VACAM control software, the Tekla Layout Marking Plugin software, and Voortman's 3D modeling software such as Tekla.  Haas is a customer of Voortman that owns and uses the accused products—the V630 and V808 machines, including the use of those machines with the above-described software.  In its complaint, Ficep accuses Voortman of inducing infringement by its customers.  Ficep asserts that the requested inspection is relevant to determine how Voortman's customers (i.e., Haas) use these machines to determine whether they directly infringe its '719 patent.  Ficep explains that part of the analysis to determine whether Voortman is inducing infringement is to see if Voortman is providing instructions on how to use the machines, including the use of them with certain software.

Ficep also accuses Voortman of contributory infringement of the '719 patent by selling the V630 and V808 machines to its customers because those machines are a component of a machine, manufacture, combination or composition used by its customers, or are a material or apparatus used by its customers in practicing a process patented in the '719 patent.  Therefore, Ficep contends that the inspection is relevant to investigate the "machine, manufacture, combination, or manufacture" or the "process" used by a Voortman customer—Haas.

As already noted, Haas has failed to meet its burden to show that there is "no possibility" that the inspection requested could have any "possible bearing" on a claim or defense of the parties. The court therefore overrules Haas's relevancy objection to this subpoena to the extent it requests "to inspect the use of Voortman's products at HME, including its process of creating a design model, such as a Tekkla model or CAD model, through fabrication of the object."

Undue Burden. Haas objected to the subpoena "to the extent that it may cause substantial annoyance, oppression, undue burden or expense to HME and/or its counsel."[17] "Compliance with a subpoena inevitably involves some measure of burden to the producing party. Nevertheless, the court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense."[18] The individual objecting to a subpoena carries the burden to show compliance with the subpoena would subject him to an undue burden.[19] Typically, a movant asserting an undue burden objection "must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."[20]

---

[17] ECF doc. 2-11 at 3.

[18] *Booth v. Davis*, No. 10-4010, 2011 WL 2008284, *7 (D. Kan. May 23, 2011) (citing *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993)).

[19] *Id.* (citing *Booth*, 985 F.2d at 1040).

[20] *Id.* at *8 (citing *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, No. 08-212, 2008 WL 2309011, *5 (D. Kan. June 3, 2008) (citation omitted)).

Haas argues that the inspection of the equipment during the entire fabrication process will cause an undue burden. Haas explains that the fabrication process is extensive because it involves estimating, design, engineering, fabrication, and trucking. In addition, it involves multiple departments working together. Because of the "extensive nature" of the "operation" and "fabrication relating to multiple construction projects," Haas asserts that the process takes several days.[21] Haas contends that to videotape each phase of the process will take several days and repeated trips to the facility. Haas insists that what Ficep really wants is for Haas to stop all existing fabrication so that it can videotape the fabrication process from start to finish in one complete setting. Haas asserts that such a request is "completely unreasonable as it jeopardizes existing deadlines and subjects Haas to potential liquidated damages under various construction contracts."[22]

Ficep responds that Haas's description of its production process lacks evidence and sufficient detail to explain why an inspection would be unduly burdensome and why it could not occur in one day. Ficep asserts that Haas hasn't shown why an inspection will require it to stop all existing fabrication. Ficep clarifies that is not asking Haas to stop fabrication for the inspection. To alleviate Haas's concern about the inspection taking multiple days, Ficep insists that a one day inspection is feasible by picking the

---

[21] ECF doc. 14 at 7.

[22] *Id.*

inspection time based on the time of fabrication of a component, not the time of the design of that component. Ficep explains that part of the inspection would then include viewing and videoing that design model that was previously created, and then videoing a component from that design model being fabricated. Moreover, Ficep states that it "is not requesting to see every component in that design model fabricated, but can limit the inspection to viewing the fabrication of a component from the design model that has scribing of intersections performed on it."[23] Therefore, Ficep insists that there should be no need to shut down production; nor should the inspection take multiple days.

Finally, Ficep emphasizes Haas's failure to address the fact that Haas has allowed its facilities to be videotaped before, which can be seen on Voortman's website.[24] Ficep asserts that the video shows how Haas has allowed the videotaping of its entire process, starting with a "design model" created using "Tekla" or other 3D modeling software, information from that design model going to the Voortman machine (including layout marking information and use of the additional software provided by Voortman called the TLMP), and the production of the metal components that Haas manufactures using the Voortman machine. Ficep argues that Haas's failure to address how the filming of the above-described video was not burdensome further demonstrates how Haas has failed to meet its burden to show undue burden for the requested inspection.

---

[23] ECF doc. 17 at 13.

[24] *See* video at http://www.voortman.net/en/vmedia/testimonials/147-hme-inc

The court finds that Haas has provided only conclusory allegations and has not offered any detailed explanation, affidavit, or other evidence demonstrating that it *will* suffer undue burden and expense complying with the subpoena. Haas's response is rife with speculation and vague possibilities of how inspection *might* impact its operation. Haas has failed to meet its burden to show the inspection requested would be unduly burdensome. Thus, Hass's objection on this ground is overruled.

Confidentiality. Initially, Haas objected to the subpoena "to the extent that it seeks information that constitutes or evidences trade secrets or other proprietary, commercially confidential, or trade-sensitive business information."[25] Haas reasserts this confidentiality objection, stating that *Ficep* has failed to address Haas's "contractual obligations to the various contractors and the United States Government."[26] Apparently, Haas has various contracts to provide metal fabrication in the construction industry, many of which are federal projects that have various confidentiality provisions. Haas asserts that the protective order entered in the underlying litigation does not address these contractual obligations to its contractors and the federal government. Therefore, Haas argues its confidentiality objection should be sustained. However, Haas suggests that a possible solution to this problem is "to not allow any such inspection if it involves the

---

[25] ECF doc. 2-11 at 3.

[26] ECF doc. 14 at 8.

design or fabrication of product used in a project with confidentiality requirements."[27] Ficep agrees that the inspection can occur at a time when there are no confidentiality concerns for Haas. Thus, this objection is no longer at issue.

This agreement aside, Haas, as the party objecting to the "subpoena on the basis that it seeks [to inspect a process] containing confidential or commercial information has the burden to establish 'that the information sought is confidential and that its disclosure will result in a clearly defined and serious injury to [Haas].'"[28] The claim "must be expressly made and supported by a sufficient description of the nature of the documents, communications, or things not produced so as to enable the demanding party to contest the claim."[29] Haas fails to recognize that a party may not rely on the confidential nature of a process as a basis for refusing to comply because "[c]onfidentiality does not equate to privilege."[30] Especially, in a case such as this where a protective order is in place. Thus, the court overrules Haas's confidentiality objection to the subpoena.

IT IS THEREFORE ORDERED:

---

[27] *Id.*

[28] *Martinelli v. Petland, Inc.*, No. 10-407, 2010 WL 3947526, *8 (D. Kan. Oct. 7, 2010) (quoting *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 592 (D. Kan. 2003) (citation omitted)).

[29] *Id.* (citations omitted).

[30] *Stewart*, 2002 WL 1558210, at * 5 (citing *Hill v. Dillard's, Inc.*, No. 00-2523, 2001 WL 1718367, *4 (D. Kan. Oct. 9, 2001) (quoting *Folsom v. Heartland Bank*, No. 98-2308, 1999 WL 322691, *2 (May 14, 1999)).

1. Ficep's motion to compel **(ECF doc. 1)** is granted.  The parties shall confer and come to an agreement regarding an inspection date and time no later than **February 25, 2015.**

2. The parties shall bear their own expenses and attorney fees incurred in connection with this motion.

Dated February 11, 2015 at Kansas City, Kansas.

  s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge